IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LINDA J. DANIELL,

    Plaintiff,

v.        CV 08-1088 CEG

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Linda J. Daniell ("Ms. Daniell" or "Plaintiff") brought this action seeking judicial review of the denial of her claim for Title II Disability Insurance Benefits. This matter is before the Court on Ms. Daniell's "Motion to Reverse or Remand Administrative Agency Decision." See docket no. 13. Because the Commissioner's decision applies the proper legal standards and is supported by substantial evidence, the undersigned finds the motion should be denied.

### Standard of Review

In reviewing the agency's decision, the Court must "'determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied.'" Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004) (quoting Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotations omitted). "[A] decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Id. (internal quotation omitted). The Court must meticulously examine the record to determine whether substantial evidence supports the Administrative Law Judge's ("ALJ") decision. Id. In

conducting such an examination, the Court must take into account anything in the record that "fairly detracts" from the evidence supporting the ALJ's decision. Id. Moreover, "[t]he agency's failure to apply correct legal standards, or show us it has done so, is also grounds for reversal." Id.

### The Sequential Evaluation Process

"To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. § 423 (d)(1)(A)). The Social Security Administration employs a "five-step sequential evaluation process to determine disability." Barnhart v. Thomas, 540 U.S. 20, 24 (2003). At step one of the process, the claimant must show that she is not working at a substantial gainful activity. See 20 C.F.R. §§ 404.1520(b) and 416.920(b). At step two, the claimant must show that she has an impairment, or combination of impairments, that are severe enough to significantly limit her ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c) and 416.920(c). At step three, it is the claimant's burden to show that the impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement, the claimant is disabled. If it does not, the analysis proceeds to the next step. At step four, the ALJ must determine the claimant's residual functional capacity ("RFC") and consider, in light of this RFC, whether the claimant retains the ability to perform past relevant work. See 20 C.F.R. §§ 404.1520(e) and 416.920(e). An individual's RFC is her ability to do physical and mental work activities on a sustained basis

despite limitations from her impairments.  See id.; 20 C.F.R. § 404.1545.

The claimant bears the burden of proof throughout the first four steps of the sequential evaluation process.  At step five, however, the "burden shifts to the Secretary to show that the claimant retains the RFC to do other work that exists in the national economy."  Thompson, 987 F.2d at 1487.  "How the ALJ should proceed on step five to make the ultimate determination that the claimant is disabled or not depends on whether the claimant alleges an exertional impairment (strength-related), or non-exertional impairment (pain or mental problems), or both."  Id.

### Background

On December 1, 2004, Plaintiff filed her application for a period of disability and Disability Insurance Benefits, alleging disability beginning October 11, 2004.  See Administrative Record ("AR") at 16 and 49-53.  Ms. Daniell's claim was denied initially on February 11, 2005, and upon reconsideration on June 20, 2005.  Id. at 16, 33-35, and 37-39. After the adverse decisions by the Commissioner of Social Security, Plaintiff requested and was granted a hearing before an ALJ.  Id. at 16, 25-29, and 32.  On June 4, 2007, Ms. Daniell appeared, with the representation of an attorney, before ALJ Barbara Licha Perkins.  Id. at 188-218.  At the hearing, the ALJ took testimony from Ms. Daniell, who was 54 years old at the time of the hearing, and Pamela Bowman, a vocational expert.  Id.  On February 21, 2008, the ALJ issued an unfavorable decision denying Ms. Daniell's claim.  Id. at 16-22.  The Appeals Council denied Ms. Daniell's request for review, making the ALJ's February 21, 2008 decision the Commissioner's final decision.  Id. at 5-9.

In the Commissioner's final decision, the ALJ noted Ms. Daniell met the insured status requirements of the Social Security Act through December 31, 2008.  See id. at 16, 17.  At step one of the sequential evaluation process, the ALJ found Ms. Daniell had not engaged in

substantial gainful activity since October 11, 2004, the alleged onset date. See id. at 17. The ALJ indicated at step two that Ms. Daniell suffered from the following severe impairment: status-post remote left ankle fracture, with severe degenerative posttraumatic arthrosis. See id. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. See id.

At step four, the ALJ determined "[a]fter careful consideration of the entire record" that Ms. Daniell had the RFC to lift and carry up to ten pounds, could stand and walk for a total of no more than two hours and continuously for fifteen minutes, and could sit for a total of no more than six hours. See id. at 17. The ALJ further found Plaintiff had the RFC to push and pull with the upper extremities "in a manner consistent with the strength limitations just stated and with the lower extremities except . . . [for] her right foot." Id. The ALJ indicated Plaintiff should never climb ropes, ladders, or scaffolds, but that she could occasionally climb ramps and stairs and occasionally balance, stoop, kneel, crouch, and crawl. See id. Finally, the ALJ determined Ms. Daniell must avoid concentrated exposure to unprotected heights and hazardous moving machinery. See id. (citing 20 C.F.R. §§ 404.1527, 404.1529 and Social Security Rulings "SSR" 96-2p, 96-4p, 96-5p, 96-6p, 96-7p, and 06-3p).

The ALJ next determined that Plaintiff was able to perform her past relevant work as a secretary, as it is generally performed. See id. at 21. The ALJ noted that the impartial vocational expert described Plaintiff's past work as: sales person for clothing store (Dictionary of Occupational Titles number 279.357-054), light and semi-skilled, and secretary with concrete company and with oil company (Dictionary of Occupational Titles number 201.362-030), sedentary and skilled. See id. The ALJ found that the duration, recency, and value of the work

satisfied the criteria for past relevant work and noted that the vocational expert had opined that a person with Ms. Daniell's RFC could perform her past work as a secretary, as it is generally performed.  See id.  Ultimately, the ALJ concluded that Plaintiff had not been disabled as defined in the Social Security Act at any time through the date of her decision.  See id. at 21-22.

On November 19, 2008, Ms. Daniell filed an appeal in this Court.  See docket no. 1.  In Plaintiff's "Memorandum in Support of Motion to Reverse or Remand Administrative Agency Decision," she alleges the administrative decision contains multiple errors.  See docket no. 14.  Specifically, Ms. Daniell argues: (i) the ALJ's RFC assessment is unsupported and inconsistent with the findings of Plaintiff's treating physicians, in violation of SSR 96-8p and SSR 96-2p; (ii) the ALJ's adverse credibility finding is unsupported by substantial evidence "and is simply a conclusion in the guise of findings" prohibited by the Administration's own rules and Tenth Circuit case law; and (iii) the ALJ's step four finding that Plaintiff is capable of returning to past relevant work as a secretary is unsupported by substantial evidence and violates the provisions of SSR 82-62 and Tenth Circuit case law.  Id. at 9-26.  On August 13, 2009, the Social Security Administration filed a response to Plaintiff's Motion to Reverse or Remand, which asserts the Commissioner used the correct legal standards and the decision is supported by substantial evidence.  See docket no. 15.  On September 22, 2009, Plaintiff filed a reply to Defendant's response.  See docket no. 19.

**Analysis**

**A.     RFC Assessment**

Ms. Daniell first argues the ALJ's RFC assessment is unsupported and inconsistent with the findings of Plaintiff's treating physicians.  See docket no. 14 at 9-17.  Plaintiff contends the

assessments provided by treating physicians Dr. Julian Venegas[1] and Dr. Michael Murphy[2] were entitled to controlling weight as to Ms. Daniell's functional limitations. See id. at 9-12. Plaintiff argues the "ALJ failed to provide specific legitimate reasons for weight assigned to the treating physician opinions" and that the ALJ was required to re-contact the treating doctors. Id. at 12-

---

[1] Plaintiff saw Dr. Venegas on March 4, 2005, with complaints of left ankle pain and difficulty ambulating. See AR at 115. Dr. Venegas diagnosed Ms. Daniell with left ankle pain in addition to lower extremity swelling, and he ordered an x-ray of her left ankle. See id. The x-ray showed osteoarthritic changes to Plaintiff's mortise joints due to an old fracture, with no acute fracture identified. See id. at 116. Plaintiff also saw Dr. Venegas on March 22, 2005, for treatment of her left ankle pain. See id. at 114. At that time, Dr. Venegas diagnosed Plaintiff with left ankle osteoarthritis, prescribed her pain medications, and suggested physical therapy. See id. Ms. Daniell continued to seek treatment from Dr. Venegas for her ankle pain in mid-2005, and, on September 9, 2005, Plaintiff returned to Dr. Venegas with complaints of left ankle pain. See id. at 111-113. Dr. Venegas' examination of Ms. Daniell's extremities showed she had swelling in her left knee, and that her left ankle had decreased range of motion and was tender to the touch. See id. at 111. He diagnosed Plaintiff with left ankle pain/osteoarthritis, and prescribed her a brace and a cane. See id. Also on September 9, 2005, Dr. Venegas completed an assessment of Ms. Daniell's ability to perform work-related activities, indicating that she could: lift and/or carry less than five pounds; stand/walk for a total or less than two hours of an eight hour workday; and sit for six hours of an eight hour workday. See id. at 102-03. Additionally, Dr. Venegas stated Plaintiff's medical impairments could reasonably be expected to cause fatigue, such that she would need to rest for long periods of time. See id. During the latter part of 2005, Dr. Venegas continued to treat Plaintiff's complaints of left ankle pain, and gave her a joint injection for pain on September 16, 2005. See id. at 105-10.

[2] On March 7, 2006, Plaintiff presented to Dr. Murphy stating her left ankle had given out, causing injury to her right ankle. See AR at 123. Dr. Murphy diagnosed Ms. Daniell with right ankle pain and prescribed pain medication. See id. On March 21, 2006, Ms. Daniell returned to Dr. Murphy for treatment of her right ankle. See id. at 122. Dr. Murphy's examination showed her right ankle had intact sensation and he continued to prescribe pain medication. See id. On August 8, 2006, Dr. Murphy examined and diagnosed Plaintiff with left ankle pain. See id. at 121. On May 30, 2007, Plaintiff returned to Dr. Murphy for treatment, and the doctor completed an assessment of Plaintiff's ability to do work-related activities, indicating Plaintiff could: lift and/or carry less than five pounds; stand/walk for a total of less than two hours in an eight hour workday; and sit for four hours of an eight hour workday. See id. at 167-170. Dr. Murphy also indicated Plaintiff had marked limitations in her ability to maintain physical activity for long periods without resting intermittently. See id. at 168. Dr. Murphy noted the medical findings supporting his opinion were Plaintiff's pain and the limited range of motion in her ankle. See id. at 167.

16. Lastly, Plaintiff asserts the "ALJ's disregard of Dr. Murphy's postural limitation was legal error." Id. at 16-17.

Substantial evidence is more than a mere scintilla but less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Campbell v. Bowen, 822 F.2d 1518, 1522 (10th Cir. 1987). Substantial evidence supports the ALJ's evaluation of the medical source opinions in this case. The Commissioner will give controlling weight to a treating physician's opinion only if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in Ms. Daniell's case record. See 20 C.F.R. § 404.1527(d)(2). If the opinion is deficient in either of these respects, then it is not entitled to controlling weight. See Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003). It is well-settled that the Court is precluded from re-weighing the evidence or substituting its own judgment for that of the Commissioner. See Hamilton v. Sec'y of Health & Human Serv's, 961 F.2d 1495, 1500 (10th Cir. 1992).

In determining Plaintiff's RFC, the ALJ properly considered all of the medical opinion evidence, including the opinions from Dr. Venegas and Dr. Murphy, and explained her reasons for the weight assigned to the opinions. Here, the ALJ did not simply disregard the opinions of Dr. Venegas and Dr. Murphy. To the contrary, the ALJ actually found some of Dr. Venegas and Dr. Murphy's opinions to be supported. For example, the ALJ's RFC finding that Plaintiff could sit for up to six hours was consistent with Dr. Venegas' opinion that Plaintiff could sit (with normal breaks) for "about six hours in an eight hour workday." See AR at 17, 103. Additionally, the ALJ's RFC finding that Ms. Daniell was limited from pushing or pulling with her lower left extremity was also consistent with Dr. Murphy's opinion that Plaintiff had limited

use of her lower extremity due to diminished range of motion in her left ankle.  See id. at 17, 167.  Thus, the ALJ's decision demonstrates that she did not simply summarily dismiss the opinions of Dr. Venegas and Dr. Murphy.

The ALJ did, however, properly question the basis of Dr. Venegas and Dr. Murphy's opinions that Plaintiff's ankle problems precluded her from lifting more than five pounds.  See id. at 20-21.  Specifically, the ALJ found both doctors treated Plaintiff primarily for her ankle problems, but neither explained why Ms. Daniell's ankle condition limited her to lifting/carrying less than five pounds.  See id. at 20-21, 102-03, 105-15, 121-23, 167-68, and 170.  Additionally, the doctors' treatment records did not support their restrictive functional assessment of Ms. Daniell.  Dr. Venegas, for example, did not indicate the specific medical findings that supported his medical opinion that Plaintiff could only lift/carry less than five pounds, but vaguely pointed to "records and radiology."  See id. at 103.  The records from Dr. Venegas, however, do not support his opinion since he did not treat Plaintiff for any problems with her upper extremities and Ms. Daniell did not report any difficulties with her upper extremities.  See id. at 105-15.  Similarly, Dr. Murphy's assessment form does not reference any examination reports indicating Ms. Daniell had difficulty lifting or carrying[3] any weight.  See id. at 121-23, 167-70.

The Court finds the ALJ did not need to recontact Plaintiff's physicians regarding the discrepancy between Dr. Venegas and Dr. Murphy's restrictive functional assessments and their contemporaneous treatment records.  The regulations require recontact only in certain circumstances, such as when the evidence from a treating physician is "inadequate for [the

---

[3] Dr. Murphy, similar to Dr. Venegas, did not treat Plaintiff for any problems with her upper extremities.  See id. at 121-23, 170.  As the ALJ noted, Dr. Murphy did not state, and his records do not support, his claim that Plaintiff's ankle problems caused such severe sitting and lifting restrictions.  See id. at 21, 121-23, and 167-70.

Agency] to determine whether you are disabled." 20 C.F.R. § 404.1512(e). "[I]t is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the evidence the ALJ receives from the claimant's treating physician that triggers the duty." White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2001) (internal quotations omitted). See also 20 C.F.R. § 416.912(e). In this case, the ALJ had all of Dr. Venegas' and Dr. Murphy's treatment records and Plaintiff does not claim any records were missing.[4] The Court finds the evidence from Plaintiff's physicians was "not so incomplete that it could not be considered." Id.

The record reveals that despite Dr. Venegas' and Dr. Murphy's relatively restrictive functional assessments, substantial evidence of record supports the ALJ's determination that Plaintiff's RFC did not preclude her from sedentary work activities. See AR at 17-21. In determining Plaintiff's RFC, the ALJ properly considered all of the medical opinion evidence and explained her reasons for the weight assigned to the opinions. As such, the Court finds Plaintiff's first claim fails.

**B.     ALJ's Credibility Finding**

Plaintiff contends the ALJ's credibility findings with respect to Ms. Daniell were not supported by substantial evidence. See docket no. 14 at 17-22. Plaintiff argues the ALJ's credibility finding "is simply a conclusion in the guise of findings." Id. at 17. Plaintiff claims the reasons the ALJ gave for her credibility assessment were "interrelated with Ms. Daniell's

---

[4] Plaintiff, through counsel, submitted updated medical records to the agency in June 2007, June 2008, July 2008, and September 2008. See AR at 169, 172, 177, and 180. Thus, Plaintiff had the opportunity and did in fact provide additional medical information. It is not a requirement that the ALJ act as Plaintiff's advocate in order to meet her duty to develop the record. See Henrie v. U.S. Dep't of Health & Human Servs., 13 F.3d 359, 361 (10th Cir. 1993).

lack of medical insurance, which did not render her incredible or negate the severity of her pain complaints." Id.  Plaintiff contends the ALJ's finding was inconsistent with Social Security Ruling 96-7p and the Tenth Circuit's opinion in Luna v. Bowen, 834 F.2d 161, 165-166 (10th Cir. 1987).

In Luna v. Bowen, the Tenth Circuit found that when assessing credibility, the fact finder can look at objective indicators of pain, such as attempts to find relief; use of medications, including the dosage, effectiveness, and side effects of such medication; willingness to try any treatment prescribed; the use of crutches or a cane; regular contact with doctors; and the claimant's daily activities.  See Luna, 834 F.2d at 165-166.  Here, the ALJ discussed the appropriate factors upon which she relied in determining Plaintiff's credibility.  See AR at 18-21. The ALJ, in making her finding, "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and SSRs 96-4p and 96-7p." Id. at 17.

The Tenth Circuit has held that an ALJ need not provide a formalistic factor-by-factor recitation of the evidence as long as she sets forth the specific evidence upon which she relies in evaluating the claimant's credibility.  See Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Here, the ALJ acknowledged Plaintiff had some limitations as a result of her status-post remote left ankle fracture, with severe degenerative post-traumatic arthrosis.  See AR at 17.  The ALJ, however, noted that Ms. Daniell's "medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." Id. at 18.  An ALJ may properly consider what attempts Plaintiff has made to relieve her pain in an

effort to evaluate the veracity of Ms. Daniell's contention that her pain was so severe as to be disabling. See Qualls, 206 F.3d at 1372. As the ALJ discussed, Plaintiff testified she was uninsured since 2000, and was thus unable to afford medical care for her ankle. See AR at 20, 203, 207-08, and 212-13. Plaintiff also testified that she had health insurance until at least January 2004. See id. at 213. The medical evidence shows Plaintiff did not seek treatment for her ankle[5] between June 2000 and March 2005. See id. at 115, 133. Thus, the ALJ properly considered Ms. Daniell's failure to seek treatment for her ankle problems when judging Plaintiff's credibility.[6]

In weighing Ms. Daniell's credibility, the ALJ also properly considered Plaintiff's statements regarding her functional restrictions and Plaintiff's behavior when assessing the veracity of Plaintiff's subjective complaints. Specifically, the ALJ noted Plaintiff's questionable use of a cane. See id. at 20. In weighing credibility, an ALJ may consider a claimant's "regular use of a cane." Luna v. Bowen, 834 F.2d 161, 165-66 (10th Cir. 1987); SSR 96-7p. Ms. Daniell stated she had difficulty walking and that she used a cane primarily at home or when she went somewhere she knew she would need a cane. See AR at 202. The ALJ found Plaintiff's claim that she needed a cane more at home was unreasonable because "she would require the use of an

---

[5] Ms. Daniell saw Dr. Robinson for ankle pain in June 2000, and he indicated that Plaintiff may need ankle surgery if her ankle brace did not provide relief. See id. at 133. Plaintiff did not return to Dr. Robinson and did not seek treatment for her ankle pain until March 2005, even though the record indicates she was treated for other health concerns during the same period. See id. at 115, 134-64.

[6] Even if Plaintiff's failure to seek treatment was due in part to financial hardship, that fact is not determinative. As the ALJ noted, Plaintiff has not shown that free community resources were unavailable or that she sought medical treatment but was refused because of her inability to pay. See AR at 20; Mann v. Astrue, 284 Fed. Appx. 567, 571, 2008 WL 2718821 (10th Cir. July 14, 2008). Instead of showing she was denied treatment, Plaintiff admitted she was able "to obtain medical treatment despite lack of insurance." See AR at 202.

assistive device more for walking while she is away from her home, since it is more likely that the distances would be longer, the terrain more uneven, and hazards present . . ." Id. at 20. Additionally, despite Ms. Daniell's testimony that she could only walk one block, the ALJ noted Plaintiff did not bring a cane to the administrative hearing or use a cane to ambulate at her consultative examinations in January 2005 and June 2008. See id. at 19, 87, 186, and 201-02. The ALJ also indicated that Plaintiff specifically informed her consultative physician, Dr. Lund, in January 2005 that she did not use a cane, walker, or crutches. See id. At 19, 87.

Plaintiff contends that lay witness statements given after the ALJ's decision should alter the ALJ's credibility determination. See docket no. 12 at 21-22. Plaintiff's husband and aunt both submitted statements in June 2008 indicating Plaintiff was unable to walk without the assistance of a cane or another person. See AR at 177-81. Both of the statements, however, were submitted after the ALJ denied Ms. Daniell benefits in February 2008. Moreover, both statements contradict Plaintiff's consultative examination from the same month, where Plaintiff was able to walk without the use of any assistive devices. See id. at 179, 181, and 186. The Court finds the statements from Plaintiff's husband and aunt contradict Plaintiff's own testimony that she could walk without the assistance of a cane outside her home and her admission to Dr. Lund in January 2005 that she "does not use a cane, walker, or crutches." Id. at 87, 177-81, and 202.

The ALJ properly weighed the objective evidence and Plaintiff's subjective allegations before determining the evidence did not support Ms. Daniell's claims of disabling limitations. In evaluating the credibility of Plaintiff's subjective complaints, the ALJ properly considered appropriate and relevant factors. The Court is not permitted to re-weigh the evidence or substitute its own opinion for the ALJs. See Glass, 43 F.3d 1392, 1395 (10th Cir. 1994); Casias

v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Based on a review of the entire record, the Court finds substantial evidence supports the ALJ's conclusion that Plaintiff's complaints of disabling impairments were not fully credible. Plaintiff's second claim for relief, therefore, is also without merit.

**C.     ALJ's Step Four Finding**

Finally, Plaintiff asserts the ALJ's step four finding failed to apply the legal framework required under both SSR 86-62 and the Tenth Circuit's decision in Winfrey v. Chater, 92 F.3d 1017 (10th Cir. 1996). See docket no. 12 at 22-26. Plaintiff also claims that her alleged unsuccessful attempt to work as a hotel clerk "detracts from the ALJ's finding at the third phase of step four" that Plaintiff could perform her past secretary work as it is generally performed. Id. at 25. Plaintiff contends the "ALJ's failure to undertake . . . specific analysis and support her findings . . . was legal error that can only be remedied by the ALJ upon remand." Id. at 26.

A step four analysis consists of three phases. See Winfrey, 92 F.3d at 1023-24. First, the ALJ must evaluate a claimant's physical and mental RFC. See id. Next, the ALJ must determine the physical and mental demands of the claimant's past relevant work. See id. Finally, the ALJ must determine whether the claimant has the ability to meet the job demands with her given RFC. See id. Plaintiff's contention that the ALJ erred at phase one of the Winfrey analysis by not including all of Dr. Venegas' and Dr. Murphy's functional limitations in Ms. Daniell's RFC is without merit. As discussed above, the ALJ properly weighed Ms. Daniell's physician's medical opinions when formulating Plaintiff's RFC.

The Court finds the ALJ also performed a proper analysis under Winfrey at phases two and three. The ALJ properly discounted Plaintiff's testimony and Dr. Murphy's assessment form opinion. See AR at 19-21. The vocational expert testified Plaintiff was capable of

performing her past relevant work as a secretary as it is generally performed in the national economy.  See id. at 213-16.  At the fourth step, the ALJ may make a finding of not disabled when a claimant is capable of performing the actual demands of her past job *or the demands of the occupation as generally required by employers throughout the national economy*.  See Andrade v. Sec'y of Health & Human Servs., 985 F.2d 1045, 1050 (10th Cir. 1993); SSR 82-61 (emphasis added).  In this case, the ALJ summarized with approval the testimony of the vocational expert, including the title, skill level, and exertional requirements of Plaintiff's past relevant work.  See AR at 21, 213-17.  An ALJ may quote with approval a vocational expert's testimony and rely on information that a vocational expert gives at step four, as the ALJ did in this case.  See Doyal v. Barnhart, 331 F.3d 758, 761 (10th Cir. 2003); Winfrey, 92 F.3d at 1025.

       The Court finds Plaintiff's contention that her alleged unsuccessful attempt to work as a hotel clerk detracts from the ALJ's step four finding is without merit.  The Court notes the vocational expert did not testify to the exertional demands of the hotel clerk job, and did not identify the Dictionary of Occupational Titles ("DOT") number 238.367-038 that Plaintiff attributes to the job.  Even if the DOT number is accurate, however, Plaintiff's assertion the hotel clerk job is "a sedentary occupation with similar physical demands to that of secretary" is not correct.  The DOT indicates the hotel clerk job as light work, as opposed to Ms. Daniell's past secretary work, which is defined as sedentary work.  Compare DOT § 238.367-038 (hotel clerk) with DOT § 201.362-030 (secretary).  Thus, Plaintiff's argument is unsupported by the DOT and the record in this case.  As such, the Court finds Ms. Daniell's final claim also fails.

**D.**    **Summary**

       The Court cannot conclude that the ALJ erred in determining Ms. Daniell could perform her past relevant work as a secretary as it is generally performed after recognizing that she did

have a severe impairment that resulted in various limitations.  The ALJ's handling of the case is supported by substantial evidence and the ALJ's decision comports with relevant legal standards.  Even if the ALJ did not discuss all the evidence to Plaintiff's satisfaction, she was not required to discuss every piece of evidence in the record, and her decision reflects consideration of both the objective and subjective evidence she relied upon and the probative evidence she rejected.  See Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996).  Because the ALJ's determination is supported by more than a scintilla of evidence and was reached through applying proper legal standards, her findings are conclusive.  The Court is not permitted to re-weigh the evidence or substitute its own judgment for the ALJ's.  See Glass, 43 F.3d at 1395; Casias, 933 F.2d 799, 800 (10th Cir. 1991).

## Conclusion

For the reasons set forth above, Ms. Daniell's "Motion to Reverse or Remand Administrative Agency Decision" (docket no. 13) is **DENIED**.  **IT IS SO ORDERED**.

_____
UNITED STATES MAGISTRATE JUDGE